IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MADALYNNE H.,

    **Plaintiff,**

  v.

    Civil Action 2:24-cv-4126
    Judge Douglas R. Cole
    Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Madalynne H., brings this action under 42 U.S.C. § 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10), the Commissioner's Memorandum in Opposition (ECF No. 12), Plaintiff's Reply (ECF No. 13), and the administrative record (ECF No. 7). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

I.     BACKGROUND

Plaintiff filed her applications for DIB and SSI on October 1, 2021, alleging that she has been disabled since September 1, 2019, due to uncontrolled diabetes, DKA (diabetic ketoacidosis), frequent vomiting, and gastroparesis. (R. at 226-32, 233-39, 260.) Plaintiff's applications were denied initially in December 2021 and upon reconsideration in April 2022. (R. at 66-97, 115-22.) Plaintiff sought a *de novo* hearing before an administrative law judge. (R. at 143-48.) On September 12, 2023, administrative law judge Paul E. Yerian (the "ALJ") held a telephone hearing, at which Plaintiff, who was represented by counsel, appeared and testified. (R. at 37-65.) A vocational expert ("VE") also appeared and testified at the ALJ hearing. (*Id.*) On October 25, 2023, the ALJ issued a decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 14-36.) On September 5, 2024, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–6.) Plaintiff then timely commenced the instant action.

II.     RELEVANT RECORD EVIDENCE

The Undersigned has thoroughly reviewed the transcript in this matter, including Plaintiff's medical records, function and disability reports, and the testimony as to her conditions and resulting limitations. The ALJ summarized Plaintiff's treatment, in which he notes the record documents substantially normal physical findings, except for mainly gastrointestinal complaints when non-compliant with treatment:

> The record documents numerous ED visits and hospitalizations for diabetes and related complications, including nausea, vomiting, DKA/ketones, and abdominal pain, in the context of less than full compliance with treatment recommendations, including diet noncompliance, missed insulin doses, and marijuana use (Exs. 1F-

11F, 14F, 16F-20F, and 22F-32F). For example, an April 2020 hospitalization treatment note indicated that hyperglycemia with hyperemesis was related to marijuana use (Ex. 1F/2). In May 2020, [Plaintiff] was noted to be "often unwilling to comply with directions from nursing and self-removed IV to shower on multiple occasions" (Ex. 4F/49). A July 2020 hospitalization treatment note revealed noncompliance with missed insulin doses (Ex. 2F/11) after being outside most of the week judging skeet shooting and admitting to smoking marijuana daily (Ex. 2F/12). Cannabinoid hyperemesis syndrome was noted (Ex. 2F/17) and she acknowledged that the cause of her problems was related to intermittent Lantus dosing and induced vomiting by smoking marijuana (Ex. 2F/17). In August 2020, she was five feet, five inches tall, and weighed 128 pounds, consistent with a body mass index (BMI) of 21.3 and a normal weight (Ex. 11F/9), and she appeared to be in generally good health (Ex. 11F/9). In September 2020, she was treated for right mastitis and cellulitis related to recent nipple piercing, but two ultrasounds failed to demonstrate an underlying abscess (Ex. 9F/29). In October 2020, she indicated that her continuous glucose monitor transmitter had expired, that she had not been able to get a new one, and that she did not always test her blood sugar, but she was working at Meijer for exercise and her energy level was good (Ex. 3F/4). She indicated a high fat diet (Ex. 3F/5) and admitted smoking marijuana the past 24 hours, doing so most days of the past week (Ex. 4F/79). She was instructed to avoid smoking marijuana, as it worsened her symptoms (Ex. 4F/83), including as a possible etiology of her vomiting (Ex. 4F/95). On exam, her appearance was described as healthy, she was in no acute distress, and she moved all extremities well (Ex. 5F/8).

An April 2021 CT scan of [Plaintiff]'s abdomen revealed moderate wall thickening of the urinary bladder suggestive of cystitis and mild fluid in the pelvis (Ex. 8F/5), but a May 2021 CT scan of her abdomen and pelvis revealed only mild wall thickening involving most of the colon, likely due to nondistension, and otherwise normal findings (Ex. 8F/3). She requested hydroxyzine for nausea and vomiting, as Zofran was not helping (Ex. 9F/127). She was noted to be "talking over" her provider "most of the time" (Ex. 11F/15). She weighed 121 pounds, consistent with a normal BMI of 20.1 (Ex. 11F/16). An exam revealed normal tandem walking and normal motor function, tone, and strength (Ex. 19F/73). A June 2021 treatment note documented marijuana use, vaping, and caffeine intake (Ex. 6F/1), and she was counseled on smoking cessation. With respect to diabetes education, she would not respond or acknowledge the presence of a nurse practitioner (Ex. 9F/212) or engage in conversation, respond to questions, open her eyes, on acknowledge educational materials at her bedside (Ex. 9F/213). A history of signing out against medical advice was noted (Ex. 9F/241). She reportedly did not eat regularly; rather, she ate when she was bored or happy and only took insulin when she ate (Ex. 9F/248). In July 2021, she presented with vague complains of emesis related to large, forceful

bowel movements, but she denied rectal bleeding or melena (Ex. 6F/3). An endoscopy revealed a hiatal hernia and erosive gastritis but normal mucosa in the duodenum and esophagus (Exs. 6F/4; 7F/2), and a biopsy revealed only mild reactive gastropathy (Ex. 6F/5). A CT scan of her abdomen revealed only mild diffuse wall thickening of the urinary bladder, small layering hyper attenuation in the posterior dependent urinary bladder, and a normal appendix (Ex. 8F/2). She signed herself out against medical advice (Ex. 9F/254). In October 2021, she was treated for a tattoo infection after recent hot tub use (Ex. 25F/25). In December 2021, her grandmother reported that [Plaintiff] had a seizure while a passenger in a car with a friend, but she was using more insulin than prescribed (Ex. 19F/67).

In February and July 2022, [Plaintiff] was again discharged against medical advice, and she declined re-evaluation (Exs. 14F/16 and 22F/46, 100). In May 2022, she was observed ambulating under her own power from the bathroom to the exam room after reportedly having emesis, then sat on her knees on a stretcher and asked the provider to give her "backup" to help her catch her breath (Ex. 22F/76). She was described as uncooperative with the exam (Ex. 22F/76). Elsewhere, she was in no acute distress and had normal physical exam findings (Ex. 25F/2-3). In August 2022, she was in no distress on exam, which revealed normal findings (Ex. 19F/28-29). In September 2022, she requested a letter stating that she was unable to work, so she could get food stamps, but she was in no distress on exam (Ex. 19F/23). In October 2022, she reported having bowel movements twice daily with minimal hard stool (Ex. 19F/18), and she was in no acute distress with normal exam findings except for erythemic lesions. A CT scan of her abdomen and pelvis revealed substantially unremarkable findings, including subcentimeter mesenteric lymph nodes, hepatomegaly, normal appendix, punctate nodule in the right middle lobe, and a moderate amount of free fluid in the pelvis (Ex. 22F/25). In November 2022, she expressed interest in starting an Omnipod insulin pump, and she continued to smoke marijuana almost daily (Ex. 18F/1). She denied fevers, chills, changes in weight, palpitations, edema, dyspnea, poor concentration, headaches, back pain, joint pain, and muscle cramping (Ex. 18F/1). Normal healthy eating and physical activity were recommended (Ex. 18F/5). In December 2022, she presented for treatment to see if she could apply for disability (Ex. 19F/11), but she was in no distress on exam, which revealed normal findings except for epigastrium tenderness, and her weight was 134 pounds, consistent with a normal BMI of 22.3 (Ex. 19F/12). She was started on Linzess for constipation (Ex. 19F/12).

In January 2023, [Plaintiff] presented for dental treatment and reported continued tobacco use and caffeine intake (Ex. 19F/6). Elsewhere, she reported doing a lot better since starting the Omnipod, as her glucose was better, and she was sleeping better and in a general better mood, though she continued to smoke marijuana almost daily (Ex. 20F/1). Normal healthy eating and physical activity continued to

be recommended (Ex. 20F/4). An endoscopy revealed substantially normal findings except for mild, patchy erythematous mucosa in the antrum, with normal stomach and duodenum findings (Ex. 26F/110). A colonoscopy revealed normal findings, including the terminal ileum and entire colon (Ex. 26F/112). Stomach and duodenal biopsies revealed normal findings (Ex. 26F/30). March 2023 physical exam findings were normal (Ex. 26F/5). She reportedly was really not yet on a regimen for her chronic constipation, and Colace was prescribed (Ex. 26F/6). In April 2023, her last endocrinologist clinic visit was 3 months prior, and she was living with her boyfriend, who wanted her to move out (Ex. 30F/6). She weighed 139 pounds with a BMI of 22.86 (Ex. 30F/7), indicating that she had been gaining weight despite her reports of frequent vomiting, and she had substantially normal physical exam findings (Ex. 30F/8). In May 2023, she called a provider regarding a few questions and concerns about disability (Ex. 23F/1). Elsewhere, she left treatment against medical advice (Ex. 29F/1) after having presented with concern that her left arm where her insulin pump was might be infected (Ex. 29F/10). Exam findings were normal except for mild swelling and erythema of the left upper arm (Ex. 29F/27-28). A June 2023 treatment note indicated that she was doing very well with respect to glucose levels when she had her insulin pump on automated mode (Ex. 30F/3). An August 2023 treatment note indicated that her reported persistent vomiting was not related to DKA, as laboratory findings were absolutely normal in that regard, but was attributable to starvation ketosis, possibly due to cannabis hyperemesis or acute gastroenteritis, and she was looking much better after starting to eat more and looking more hydrated (Exs. 31F/8 and 32F/1). She was resting comfortably on exam, which revealed normal findings (Ex. 32F/2-3). Although a CT scan demonstrated mild pericolonic stranding in the descending colon, neither her symptomatology or clinical findings were consistent with colitis or an inflammatory bowel disorder (Ex. 32F/28).

(R. at 25-27.) The Undersigned with refer and cite to other evidence as necessary in the discussion of the parties' arguments below.

### III. ADMINISTRATIVE DECISION

On October 25, 2023, the ALJ issued his decision. (R. at 14-36.) The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through March 31,

2022. (R. at 19.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantially gainful activity since September 1, 2019, the alleged onset date. (*Id.*) The ALJ found that Plaintiff has the following severe impairments: diabetes with associated ketoacidosis, hyperglycemia, and hypoglycemia. (R. at 20.) The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22.)

  Before proceeding to Step Four, The ALJ set forth Plaintiff's residual functional capacity ("RFC"). He determined that Plaintiff has the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she must avoid hazards, such as unprotected heights and dangerous machinery, and must avoid commercial driving. (R. at 23.)

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

  1. Is the claimant engaged in substantial gainful activity?
  2. Does the claimant suffer from one or more severe impairments?
  3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
  4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
  5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step four of the sequential process, the ALJ determined that Plaintiff has no past relevant work. (R. at 28.) Relying on the VE's testimony, the ALJ concluded at Step 5 that Plaintiff can perform other jobs that exist in significant numbers in the national economy such as a hand packer, mail clerk or garment folder. (R. at 29-30.) He therefore concluded that Plaintiff was not disabled under the Social Security Act at any time since September 1, 2019. (R. at 30.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*

*v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives [Plaintiff] of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

V.  **ANALYSIS**

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because he failed to properly evaluate the opinions of Simona Moore, C.N.P, MS under the supportability and consistency factors as required by 20 C.F.R. § 404.1520c. (ECF No. 10 at PageID 3249-53.)

As a preliminary matter, a claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). An ALJ must assess a claimant's RFC based on all the relevant evidence in a claimant's case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)–(5); 416.913(a)(1)–(5). Objective medical evidence is defined as "medical signs, laboratory findings, or both." 20 C.F.R. §§ 404.1513(a)(1); 416.913(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical

8

findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. §§ 404.1513(a)(3); 416.913(a)(3). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. §§ 404.1513(a)(4); 416.913(a)(4). "Medical opinion" is defined as follows:

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . .
>
>> (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>>
>> (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>>
>> (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>>
>> (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes . . . .

20 C.F.R. §§ 404.1513(a)(2); 416.913(a)(2).

The governing regulations include a section entitled "[h]ow we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." 20 C.F.R. §§ 404.1520c; 416.920c. These regulations provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, they provide that an ALJ will consider medical

9

source opinions and prior administrative findings using five factors: supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5).

The regulations explicitly indicate that the "most important factors" to consider are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). Indeed, the regulations require an ALJ to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings" in a benefits determination or decision and allows that the ALJ "may, but [is] not required to, explain how [they] considered" the other factors. 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2). If, however, two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," an ALJ must also articulate the other most persuasive factors. 20 C.F.R. §§ 404.1520c(b)(3); 416.920c(b)(3).

The applicable regulations provide the following guidance for how ALJs should evaluate the "supportability" and "consistency" of medical source opinions and prior administrative findings:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

10

20 C.F.R. § 404.1520c(c)(1)-(2). In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

On May 10, 2023, Ms. Moore, Plaintiff's treating nurse practitioner, prepared a short narrative indicating that Plaintiff had been suffering from several disorders including anxiety, depression, PTSD, trichotillomania (hair pulling disorder), Type I diabetes with fluctuating glucose, and abdominal pain and bloating. Ms. Moore opined that due to the nature of her conditions, Plaintiff has been unable to sustain work due to frequent absences and the inability to predict when she would have complications from these issues. Ms. Moore concluded that Plaintiff is not able to sustain competitive employment. (R. at 2133.) The Court repeats the whole of Ms. Moore's letter here:

> To whom it may concern,
>
> This is a note to confirm that MADALYNNE HALL DOB 05/01/2002 suffers from the following disorders: Anxiety, depression, Post Traumatic Stress Disorder, Trichollomania (hair pulling disorder), Type 1 Diabetes with fluctuating glucose, abdominal bloating and pain from unknown cause.
> Due to the nature of these conditions, Miss Hall has been unable to sustain work due to frequent absences and the inability to predict when she have a complication from these disease states.

11

> It is myopinion [sic] that Miss Hall is not able to sustain employment successfully at this time.
> If you have any questions in this regard, please do not hesitate to call me.

(R. at 2133.)

The ALJ did not find the suggestion that Plaintiff requires frequent absences to be persuasive. (R. at 28.) The ALJ determined that Ms. Moore's opinion that Plaintiff that was unable to sustain employment is "reserved to the Commissioner" and not to be evaluated for persuasiveness. (*Id.*) With respect to the assessment of the need for frequent absences, the ALJ found that Ms. Moore did not provide detailed analysis regarding Plaintiff's frequent medical visits and did not address her non-compliance and frequent marijuana use. (*Id.*) The ALJ also noted that Ms. Moore did not provide significant support for the need for absences, and such a need is inconsistent with the normal physical exam findings, diagnostic imaging and test results, and activities of living when Plaintiff has been compliant with treatment. (*Id.*) In full, the ALJ discussed and analyzed Ms. Moore's opinion as follows:

> In May 2023, Simona Moore, CNP, summarized the claimant's disorders of anxiety, depression, posttraumatic stress disorder, trichotillomania, type 1 diabetes, abdominal bloating, and pain from unknown cause, which resulted in the claimant's inability to sustain work due to frequent absences and the inability to predict when she would have a complication from her disease states (Ex. 24F). Ms. Moore opined that the claimant was unable to sustain employment successfully (Ex. 24F). As I noted above, such a statement is "reserved to the Commissioner" and not to be evaluated for persuasiveness. With respect to the assessment of the need for frequent absences. Ms. Moore did not provide detailed analysis regarding the claimant's frequent medical visits and did not address the claimant's non-compliance and frequent marijuana use. Accordingly, she did not provide significant support for the need for absences, and such a need is inconsistent with the above-summarized normal physical exam findings, diagnostic imaging and test results, and activities of living when claimant has been compliant with treatment. Accordingly, I do not find the suggestion that the claimant requires frequent absences to be persuasive.

(R. at 28.) Plaintiff argues this analysis and subsequent rejection of Ms. Moore's opinion violated 20 C.F.R. § 404.1520c.

The Commissioner counters that in determining Plaintiff's RFC for light work, the ALJ properly considered the record as a whole, including Plaintiff's subjective complaints. According to the Commissioner, the ALJ properly determined that the record did not support Plaintiff's allegations as they were inconsistent with the record as a whole, including the opinion evidence, Plaintiff's medical treatment, and the other medical evidence. (ECF No. 12 at PageID 3259.)

As to Plaintiff's physical impairments, the record was reviewed by Mila Bacalla, M.D. in November 2021, who found that Plaintiff could perform light exertional work with lifting 20 pounds occasionally and 10 pounds frequently, sitting for 6 hours, and standing and walking for 6 hours. (R. at 69-71.) Dr. Bacalla also found Plaintiff must avoid concentrated exposure to unprotected heights and operating heavy machineries. (R. at 70.) Dr. Bacalla further noted that the record shows that Plaintiff's diabetes was poorly controlled due to non-compliance and use of marijuana. (R. at 71.) In April 2022, Indira Jasti, M.D., reviewed the record upon reconsideration and affirmed Dr. Bacalla's findings. (R. at 85-87.)

In evaluating the prior administrative medical findings, the ALJ found:

> [T]he assessment of Dr. Bacalla and Dr. Jasti to be persuasive, as they supported it with a summary of the physical evidence of record (Ex. 8A/2, 5-6) and a finding that [Plaintiff]'s statements were only partially consistent, particularly noting that a physician suggested that [Plaintiff]'s alleged frequent vomiting was due to marijuana use (Ex. 8A/4). Their assessment is also consistent with the updated longitudinal treatment and examining record, as well as diagnostic imaging, laboratory findings, and biopsy results, as summarized above, which document that

> [Plaintiff]'s condition has not generally resulted in acute distress, particularly when she has been compliant with treatment. Indeed, a June 2023 treatment note indicated that she was doing very well with respect to glucose levels when she had her insulin pump on automated mode (Ex. 30F/3).

(R. at 27.)

Turning to Plaintiff's Statement of Errors, Plaintiff contends that the ALJ failed to sufficiently articulate why the primary care provider's opinion was rejected. Specifically, Plaintiff argues as follows:

> The ALJ focused exclusively on the lack of explanation from certified nurse practitioner Moore. The ALJ claimed that she did not provide an explanation supporting her opinion or explaining why Ms. Hall would be frequently absent. The ALJ's narrow consideration of certified nurse practitioner Moore's opinion was insufficient. ***The ALJ was not restricted to the letter on which Ms. Moore provided her opinion. The ALJ needed to review the entire record and determine whether there was evidence that was supportive of and consistent with Ms. Moore's opinion regarding absenteeism.*** The ALJ's stance that Ms. Moore failed to provide support or that her opinion was not consistent with the record was clearly not supported by substantial evidence.

(ECF No. 10 at PageID #3251 (emphasis added).) Plaintiff then goes on to point out evidence in the record that she says supports and is consistent with a finding that Plaintiff would be frequently absent. (Id. PageID #3252-3253.)

The Undersigned concludes that in evaluating Plaintiff's subjective allegations, the ALJ properly considered the opinion evidence in the record consistent with the applicable regulations. As discussed above, in May 2023, Simona Moore, C.N.P., prepared a brief letter indicating that Plaintiff was unable to sustain work due to frequent absences and the inability to predict when she would have complications. (R. at 2133.) State agency medical consultants reviewed the record and found that Plaintiff did not have a severe

14

mental impairment and could perform a range of light work with environmental limitations.  (R. at 68-71, 84-87.)  The ALJ's consideration of Ms. Moore's opinion and the prior administrative medical findings complied with the appropriate regulations and is supported by substantial evidence.

The ALJ found the need for frequent absences inconsistent with the "above-summarized" normal physical examination findings, diagnostic imaging and test results, and activities of daily living when Plaintiff was compliant with treatment.  (R. at 28.) This determination sufficiently satisfies the requirements to determine consistency under 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  Plaintiff contends that the ALJ erred because he did not provide explicit citations to the normal examination findings in making this assessment. Plaintiff, however, ignores the ALJ's earlier statements in the decision in which the ALJ correctly noted the normal clinical findings on examination. (R. at 25-27, citing 481, 850, 1449, 1460-61, 1465-66, 2135-36, 2170, 3114-15, 3156, 3173-74.)  The ALJ also properly considered the largely unremarkable objective imaging and biopsies.  (Id., citing R. at 25-27, 487-88, 493, 496, 498, 753, 1670, 2194, 2274, 2276, 3199.)  The ALJ was not required to repeat his analysis when evaluating Ms. Moore's opinion. *See Booker R. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-00170, 2023 WL 4247312, at *5 (S.D. Ohio June 29, 2023) (". . . evaluation of the medical evidence earlier in the decision . . . suffices to allow this Court to engage in meaningful review of the ALJ's decision. And as discussed above, the Court concludes that the ALJ complied with applicable regulations when she found that the State agency medical

consultants' findings were mostly persuasive, and also that her analysis is supported by substantial evidence.") (citations omitted in which the Court of Appeals for the Sixth Circuit has generally held that meaningful judicial review exists—even if the ALJ provided only a cursory or sparse analysis—if the ALJ made sufficient factual findings elsewhere in the decision that support her conclusion.)

Substantial evidence supports the ALJ's finding regarding frequent absences was without significant support, satisfying 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  As noted above, the ALJ correctly noted the normal clinical findings on examination and properly considered the largely unremarkable objective imaging and biopsies.

Critically, Plaintiff turns the requirements of the regulations on their heads.  She argues that "[t]he ALJ needed to review the entire record and determine whether there was evidence that was supportive of and consistent with Ms. Moore's opinion regarding absenteeism."  (ECF No. 10 at PageID # 3263.)  Plaintiff then cites to her medical treatment history to support Ms. Moore's opinion.  As the Commissioner notes and the Court agrees, Ms. Moore *did not* provide that support in her brief letter.  Plaintiff attempts to offer a post-hoc rationalization to support Ms. Moore's opinion is unpersuasive at best.  The Undersigned concludes that substantial evidence supports the ALJ's finding that Ms. Moore's opinion is not persuasive.

## VI.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is

therefore, **RECOMMENDED** that Plaintiff's Statement of Errors (ECF No. 10) be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date: November 6, 2025**          *s/ Elizabeth A. Preston Deavers*
                                    **ELIZABETH A. PRESTON DEAVERS**
                                    **UNITED STATES MAGISTRATE JUDGE**